THE BULGARIA.

UNION TRANSIT CO. v. THE BULGARIA.

(District Court, N. D. New York. June 12, 1896.)

COLLISION—STEAMER WITH MOORED VESSEL.
    A steamer which, in attempting to reach her berth at the south pier
    at the westerly end of St. Mary's Falls Canal, ran into a moored vessel
    in plain sight, in ordinary weather, and without the intervention of any
    interfering current, *held* solely in fault.

This was a libel in rem by the Union Transit Company against
the steamer Bulgaria, to recover damages sustained by the steam-
er W. H. Stevens in collision with the Bulgaria.

Norris Morey, for libelant.
Harvey D. Goulder, for claimant.

COXE, District Judge. Between 2 and 3 o'clock on the morn-
ing of June 16, 1895, the steamer W. H. Stevens was in the act of
being moored to the south pier at the westerly end of the St.
Mary's Falls Canal. Her bow was fast. Her stern was about 10
feet from the pier and was being drawn in by means of a line from
the pier to her capstan. She was helpless, and, in contemplation
of law, was a moored vessel. It was not dark. There were elec-
tric lights all along the pier and dawn was commencing. There
was no wind and nothing abnormal in the elements.

It is usual for vessels awaiting their turn at the lock to tie up at
the south pier. To do this requires ordinary care and prudence
and nothing more. It is a very simple maneuver. The Stevens
had accomplished it without the slightest difficulty. The Bulgaria
followed the Stevens into the canal, passing the end of the pier
only a short time afterwards. She had the Stevens in sight for
some time and knew of her location at the pier. The proper place
for the Bulgaria was the berth just west of the Stevens. Instead
of taking it she ran into the Stevens almost end on, the bluff of
her port bow struck the Stevens' stern and she proceeded on with
such force that her stem started the heavy timbers of the pier.

The rule is conceded that in such circumstances the presump-
tion is that the moving vessel is negligent, the burden being upon
her to show that she is free from fault or that the accident was
inevitable. The Bulgaria has done neither. A mere statement
of the facts is a demonstration that the accident could have been
avoided. The task of the Bulgaria was one which a mere tyro in
navigation should have accomplished successfully. To assert that
it was absolutely impossible for her to reach her dock without
crashing into another vessel lying at a different berth is an amaz-
ing proposition and one wholly new to admiralty jurisprudence.

The theory upon which it is sought to exculpate the Bulgaria
from a liability, which, at the time, was frankly admitted, is that
she was caught in a mysterious and warlock current which drove
her into the Stevens in spite of every effort of her navigators to
prevent it. The difficulty with this theory is that it is based

upon the imagination of counsel rather than upon the proof. The weight of testimony is to the effect that there is never any dangerous current at this point, and, except when the lock is being filled or a high wind is blowing there is no current which should interfere in the slightest degree with the mooring of a vessel at the south pier.

It was not proven that the lock was being filled at the time of the collision, and, as before stated, there was no wind. How it would be possible for any current which might exist at that point to force a vessel to take the erratic course pursued by the Bulgaria it is not easy to perceive. But it is enough to say that if dangerous currents existed it was the duty of the master of the Bulgaria to know of them and guard against their effects. The Bulgaria has not overcome the presumption arising from her collision with a stationary vessel which was absolutely free from fault. Were it necessary for the court to go further and designate the precise fault of the Bulgaria there would be little hesitation in finding that the collision was due, primarily, to her undue rate of speed. She was carried past her true mooring place and instead of going down the canal she endeavored to rectify her mistake by porting and backing. It was too late. The momentum could not be overcome in the narrow space she had thus left for maneuvering.

Further discussion is unnecessary. Suffice it to say that upon the entire record the court is convinced beyond a doubt that the collision was due solely to the negligence of the Bulgaria. The libelant is entitled to the usual decree.